UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BBF ENGINEERING SERVICES, P.C., a
Michigan corporation, and BELINDA
FOSTER, an individual,

        Plaintiffs,

v.

STATE OF MICHIGAN, MICHIGAN
DEPARTMENT OF TRANSPORTATION, a
Dept. of the State of Michigan, VICTOR
JUDNIC, and MARK STEUCHER,

        Defendants.

_____/

Case No. 11-14853

Honorable Nancy G. Edmunds

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
TO DISMISS [9] [11] [12]**

      This matter comes before the Court on Defendants State of Michigan, Michigan

Department of Transportation, Victor Judnic, and Mark Steucher's motions to dismiss.

For the reasons set forth below, Defendants' motions should be GRANTED in part and

DENIED in part.

**I.**    **Facts**

      Plainitff BBF Engineering Services, P.C. is a civil engineering company, whose

clientele includes the Michigan Department of Transportation ("MDOT").  (Compl. ¶¶ 3,

7.)  Plaintiff BBF is both a certified minority contractor and a disadvantaged business

enterprise.  (*Id.* at ¶ 29.)  Plaintiff Bellandra Foster is a licensed professional engineer,

1

the first black female to be licensed as a professional engineer in the state of Michigan, and BBF's owner.  (*Id.* at ¶¶ 3, 5.)  Defendants Judnic and Steucher were MDOT employees during the time period relevant to this Complaint.

### A.    Contract No. 2006-0490

BBF was awarded MDOT contract No. 2006-0490 for $4.2 million.  (Compl. ¶ 30.) In June 2006, Defendant Judnic notified Plaintiff BBF that a portion of the contract, involving work to be done on M-10, would be re-bid.  (*Id.*)  MDOT had an initiative to unbundle larger contracts to diversify the consulting industry, but when asked if he considered the fact that Plaintiff BBF was a Disadvantaged Business Entity, Defendant Judnic stated that he "didn't think of that."  (*Id.* at ¶¶ 31, 32.)  Plaintiff BBF did not participate in the re-bid and the re-bid work for M-10 was awarded to another engineering firm, Fishbeck, a majority firm that was the third largest contractor doing business with MDOT.  (*Id.* at ¶¶ 34, 35, 37.)  Plaintiff BBF maintained the remainder of the contract, which was now worth $2.2 million.  (*Id.* at ¶ 33.)  In 2006, Defendant Judnic made statements to his staff that "no woman should be making money like that" in reference to Plaintiff Foster.  (*Id.* at ¶ 80; Compl. Ex. A, at 3.)  Plaintiff BBF received low evaluation scores for this contract and the lowest scores from among its team members.  (Compl. ¶¶ 54, 60.)  Plaintiff had to submit a request under FOIA to obtain the scores for its sub-consultants on this contract because Defendant Judnic would not release the scores to Plaintiff.  (*Id.* at ¶ 59.)

### B.    Contract 2008-0044

In October 2007, MDOT awarded Contract No. 2008-0044 to Plaintiff BBF.  (*Id.*

at ¶ 38.)  Project Engineer Jason Voigt, who was working under Defendant Judnic, informed Plaintiff BBF that the contract would be cut.  (*Id.* at ¶ 39.)  Plaintiffs complained to Defendant MDOT's finance division director and efforts to cut the contract stopped. (*Id.* at ¶ 46.)  In July 2008, Plaintiffs requested a debriefing and evaluation from Jason Voigt.  (*Id.* at ¶¶ 41-42.)  The final evaluation was released in 2009, a month after Voigt left employment with MDOT, with strangely low evaluation scores and comments that were inconsistent with Plaintiff BBF's performance and interactions with Voigt.  (*Id.* at ¶ 44.)  The evaluation contained Voigt's mechanical signature despite the fact that he no longer worked for MDOT.  (*Id.* at ¶ 45.)  Plaintiff BBF received low evaluation scores for this contract and the lowest scores from among its team members.  (Compl. ¶¶ 54, 60.) Plaintiff had to submit a request under FOIA to obtain the scores for its sub-consultants on this contract because Defendant Judnic would not release the scores to Plaintiff.  (*Id.* at ¶ 59).

### C.    Contract CS63052-JN72404

In May 2009, Plaintiffs bid on MDOT Contract No. CS63052-JN72404 and initially received the highest score on the bid scoring sheet.  (*Id.* at ¶¶ 61, 63).  When Defendant Steucher, who served on the scoring panel, realized that Plaintiff Foster's company was the top scorer, he stated, "Oh no, I hate her" and unilaterally changed the scoring sheets to reduce Plaintiff BBF's score.  (*Id.* at ¶¶ 66-67.)  These changes resulted in Plaintiff BBF moving from first place to last place in the score rankings, and BBF was not further considered nor awarded the contract.  (*Id.* at ¶¶ 64, 68, 70.)  The first time this event was brought to management's attention, no action was taken.  (*Id.* at ¶ 71.)  When it was brought up again, Defendant MDOT removed Defendant Steucher

3

from future selection teams, but Plaintiffs received no direct remedy for his actions.  (*Id.* at ¶¶ 71, 74.)

### D.   Other Contracts

In September 2009, Plaintiff BBF bid on a contract that was awarded to Fishbeck, the same majority firm that was awarded the M-10 rebid on the 2006 contract. (Compl. ¶ 47.)  The score sheet for Plaintiff BBF indicated that it was missing key MDOT staff.  (*Id.* at ¶ 48.)  Defendant Judnic refused to meet with Plaintiffs to explain the scoring.  (*Id.* at ¶ 49.)  Defendant Judnic also refused to conduct debriefing meetings with Plaintiffs in person, even though he did them for other consultants, and would only conduct a debriefing meeting with them by phone.  (*Id.* at ¶¶ 51-52.)

### E.   Retaliation

In July 2010, Plaintiffs filed eleven Title VI complaints with the United States Department of Transportation ("USDOT") and Federal Highway Administration ("FHWA"), alleging discrimination and disparate treatment.  (Compl. ¶ 20.)  USDOT and FHWA deemed some of the complaints as untimely and referred the others to Defendant MDOT.  (*Id.* at ¶¶ 24, 26.)  Mary Finch, an employee of FHWA, investigated the complaints and found that Plaintiffs Foster and BBF were not treated fairly in the procurement process by Defendant MDOT.  (Compl. Ex. A, at 1.)

In March of 2008, Plaintiff BBF was selected as Disadvantaged Business Enterprise Contractor of the year.  (Compl. ¶ 82.)  Between December 2008 and September 2011, Plaintiffs bid on 22 MDOT contracts and received only one selection as prime consultant.  (*Id.* at ¶ 83.)  Plaintiffs have been awarded only three prime

4

consulting contracts since 2006 and none since they filed their Title VI complaints. (Compl. ¶¶ 84, 89.)  Additionally, they have not been asked to participate as a subcontractor on any projects since filing their complaints, where previously they periodically and regularly engaged in subcontracting work.  (*Id.* at ¶¶ 88, 91.)

## II.    Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief.  *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 1950 (internal quotation marks and citation omitted).  Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Id.* (internal quotation marks and

5

citation omitted).  While legal conclusions provide the framework of a complaint, those conclusions must be supported by factual allegations.  *Id.*

A rule 12(b)(6) analysis generally forbids a court from considering documents outside the pleadings, but when a document is referred to in the complaint and is central to the plaintiff's claim, the court may consider it.  *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).  This does not convert a motion to dismiss into a motion for summary judgment.  *Id.*  In a motion to dismiss, the court may take into account exhibits attached to the complaint.  *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (internal quotations and citation omitted).

## III.   Analysis

Plaintiffs filed this action alleging violations of (1) Title VI, (2) Section 1983, (3) Section 1981, and (4) Michigan Whistleblowers' Protection Act.

### A.   Title VI

#### 1.   Defendant Steucher and Defendant Judnic

Defendants Steucher and Judnic argue that Plaintiffs' Title VI claims should be dismissed because individuals cannot be held liable under Title VI.  Plaintiffs argue that Defendants Steucher and Judnic could fall within the statute as receiving federal funds because they steered work away from Plaintiffs to majority contractors, for whom they now work and who are receiving monies from federal programs.  Additionally, Plaintiffs argue that even if Defendants Steucher and Judnic cannot be held personally liable, that they can be sued under Title VI in their official capacity.

42 U.S.C. § 2000d states, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Courts have consistently held that individuals are not liable under Title VI. *See Buchanan v. City of Bolivar, Tennessee*, 99 F.3d 1352, 1356 (6th Cir. 1996) (holding that the plaintiff's claims were properly dismissed because they were asserted against the defendants as individuals and not the entity allegedly receiving the financial assistance); *see also Price v. Louisiana Dept. of Educ.*, 329 F. App'x 559, 561 (5th Cir. 2009); *Shotz v. City of Plantation,* 344 F.3d 1161, 1171 (11th Cir. 2003); *Shannon v. Lardizzone*, 334 F. App'x 506, 508 (3d Cir. 2009).

Plaintiffs may not bring Title VI claims against Defendants Steucher and Judnic personally and Defendants' motions to dismiss any such claims are GRANTED.

Although individuals may not be held liable for violations of Title VI, this does not necessarily require dismissal of the individual defendants if they are sued in their official capacity. *Harris v. Bd. of Governors of Wayne State Univ.*, No. 10-11384, 2010 WL 5173666, at *3-4 (E.D. Mich, Nov. 19, 2010). The Supreme Court has ruled that individuals may be sued under Title VI in their official capacity. *Alexander v. Sandoval*, 532 U.S. 275 (2001). An official-capacity suit, however, generally represents another way of pleading an action against an entity where the officer is an agent and "is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The Supreme Court established that an official-capacity suit is not a suit against the official personally and the real party in interest is the entity. *Id.* Therefore, damages in an official-capacity suit must be sought from the

7

entity itself and replacement of the named official will result in automatic substitution of the official's successor in office.  *Id.* at 166 n.11; *see also Harris*, 2010 WL 5173666, at *4 (holding that plaintiffs seeking damages must look to the government entity itself and not the official).

In a case where the plaintiff has sued the government entity itself, then, a suit against the individual in his official capacity is redundant.  *Ebelt v. County of Ogemaw*, 231 F. Supp. 2d 563, 568 (E.D. Mich 2002) (adopting a magistrate's recommendation that the suit against the individual defendants in their official capacities be dismissed as duplicative of the suit against the county); *see also Santamaria v. Dallas Indep. Sch. Dist.*, 2006 WL 3350194, at *48 (N.D. Tex, Nov. 16, 2006) (holding that because the suit also named the entity as a defendant, any claims against the individuals in their official capacity are redundant.)

In this case, Defendants Steucher and Judnic argue that the Title VI claims against them in their official capacity are redundant and should be dismissed.  This Court agrees.  Plaintiffs have named the State of Michigan and MDOT as defendants and any damages sought in a Title VI claim must be sought against those Defendants. Additionally, neither Defendant Steucher nor Defendant Judnic is employed by Defendant MDOT anymore, so they no longer occupy the office against which the official-capacity claim is being raised.

Defendants Steucher and Judnic's motions to dismiss the Title VI claims against them in their personal and official capacity are GRANTED.

### 2.    Defendants State of Michigan and MDOT

Defendants State of Michigan and MDOT argue that Title VI does not protect

gender discrimination, most of Plaintiffs' claims are barred by the statute of limitations, Plaintiffs have failed to show anything more than a personal dislike, and Defendants cannot be held liable on the basis of respondeat superior.

Title VI states that no one shall be discriminated against "on the ground of race, color, or national origin." The Eleventh and Third Circuits have held that Title VI does not extend to sex discrimination. *See Shotz*, 344 F.3d at 1170 n.12 (stating that Title VI is parallel to Title IX except that it prohibits race discrimination, not sex discrimination); *Davis v. Monroe County Bd. of Educ.*, 120 F3d 1390, 1396 (11th Cir. 1997) ("Title VI did not ban gender discrimination by recipients of federal funding."); *Shannon*, 334 F. App'x at 507 n.1 ("Title VI does not cover gender discrimination."). In discussing the history of Title VI, the Supreme Court has stated "Five years later, we more explicitly considered whether a private right of action exists to enforce the guarantees of Title VI and its gender-based twin, Title IX." *Alexander*, 532 U.S. at 297.

Plaintiffs maintain that sex discrimination is prohibited by Title VI through 23 U.S.C. § 324. This statute reads,

> No person shall on the ground of sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance under this title or carried on under this title. This provision will be enforced through agency provisions and rules similar to those already established, with respect to racial and other discrimination, under title VI of the Civil Rights Act of 1964.

Plaintiffs argue that this extends Title VI protection to gender discrimination. Defendants, however, disagree. The statute states it "will be enforced through agency provisions and rules similar to those already established." This language indicates that it does not provide a private cause of action and does not extend Title VI to cover

gender discrimination, but relies on agency provisions as a vehicle of enforcement.[1]
Additionally,  23 U.S.C. § 324 was enacted on August 13, 1973.  The cases in the Third
and Eleventh Circuits that concluded that Title VI does not extend to gender
discrimination were decided well after that.

Both parties acknowledge that no Michigan court has addressed the specific
question as to whether gender discrimination is prohibited by Title VI.  This Court
agrees with the Third and Eleventh Circuits and finds that a plain reading of 42 U.S.C. §
2000d, which prohibits discrimination "on the ground of race, color, or national origin,"
does not extend to gender.  Plaintiffs cannot assert a discrimination claim under Title VI
based on gender.

Plaintiffs maintain, however, that they were discriminated against on the basis of
race and gender.  There is nothing in the Complaint, other than the fact that Plaintiff
Foster is black and the bare assertions of racial discrimination, that suggests or
supports any factual basis for a claim of race-based motives for the actions taken by
Defendants.  The report that Plaintiffs attached to their Complaint, outlining the findings
of the investigation that took place after Plaintiffs filed Title VI complaints with the
USDOT and FHWA, states "the evidence shows that based on Ms. Foster's sex
(gender) (female) an MDOT employee sent forward her contract to Lansing to have
funds removed from it."  In the report's conclusions, the report states, "The

---

[1] Plaintiffs' assertion that the Surface Transportation and Uniform Relocation Assistance
Act of 1987 includes women as a group presumed to be disadvantaged is not relevant
to the issue here, which is whether Plaintiffs can maintain a Title VI claim based on
gender discrimination.  Additionally, it supports Defendants' argument by providing an
example of an agency provision being used to enforce 23 U.S.C. § 324's prohibition on
gender discrimination.  Plaintiffs, however, have not included any similar agency
provision in their Complaint.

preponderance of the evidence shows that Mr. Judnic appears to have taken actions based on Ms. Foster's sex (gender) (female)."  The report does not indicate that any actions or discrimination took place on the basis of Plaintiff Foster's race.

There is only one mention of Plaintiff's race in the report, which indicates that Defendant Judnic's secretary verified that Defendant Judnic stated, in 2006, that "no woman should be making money like that" but did not recall if he said, 'no Black woman.'" Defendant Judnic's secretary not being able to recall whether Defendant Judnic said "no black woman" is the only mention of a possible reference to Plaintiff Foster's race by any of the Defendants, it is doubtful whether it was actually said, and Plaintiffs did not include this in their Complaint.

In a motion to dismiss, although the allegations in the Complaint are assumed to be true, the legal conclusions must be supported by factual allegations.  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.  Here, Plaintiffs have not shown that there was any racially-motivated discrimination.

Title VI does not permit a claim based on gender discrimination and Plaintiffs have failed to state a claim for race discrimination.[2]  Defendants State of Michigan and MDOT's motion to dismiss Plaintiffs' Title VI claims is GRANTED.

### 3.    Retaliation

_____

[2] Because the Court finds Plantiffs' claim deficient for these reasons, the Court need not address Defendants' other arguments for dismissal of the Title VI claim.

In the Complaint, Plaintiffs allege that Defendants violated Title VI by retaliating against Plaintiffs after Plaintiffs filed complaints against Defendants. Plaintiffs argue that they have been systematically eliminated from all sources of work and blacklisted at MDOT. To bring a claim of retaliation under Title VI, Plaintiffs must show that: (1) she engaged in activity protected by Title VI; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. Ross v. Michigan State University Bd. Of Regents, No. 10-cv-216, 2011 WL 4036644, at *6 (W.D. Mich., Sept. 12, 2011); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007). To establish a causal connection, there must be an inference that the protected activity was the likely reason for the adverse action. Michael, 496 F.3d at 596. "Although temporal proximity itself is insufficient to find a causal connection, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection." *Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 737 (6th Cir. 2006).

In their briefs, however, Plaintiffs seem to argue a completely different factual basis for retaliation. Plaintiffs argue that the protected action that they engaged in was merely participating in the bidding process at MDOT and that Defendants were retaliating against Plaintiffs for Plaintiffs' attempting to be awarded contracts. Filing complaints against MDOT for discrimination is protected activity under Title VI, but participating in the public bidding process is not. Plaintiffs cannot turn all of their discrimination claims into retaliation claims by attempting to broaden "protected action" to encompass any action at all.

12

Plaintiffs engaged in protected action under Title VI when they filed complaints with the USDOT in 2010.  In order to state a claim for retaliation, then, Plaintiffs must allege that Defendants knew of Plaintiffs' complaints, Defendants took adverse action against Plaintiffs after Plaintiffs filed the complaints, and the fact that Plaintiffs filed the complaints caused Defendant to take that adverse action.  In the Complaint, however, Plaintiffs assert that between December 2008 and September 2011, Plaintiffs bid on 22 MDOT contracts and received only one selection as prime consultant.  Plaintiffs also assert that they have been awarded only three prime consulting contracts since 2006.  By its own allegations and admissions, then, Plaintiffs were not being awarded contracts with MDOT long before Plaintiffs filed their complaints with USDOT.

While Plaintiffs' lack of success in being awarded MDOT contracts may be the result of discrimination, there is no factual basis to support a claim for retaliation.  Plaintiffs have failed to offer anything other than bare allegations that after Plaintiffs filed their complaints in 2010 that Defendants State of Michigan or MDOT retaliated against Plaintiffs.

Taking all the factual allegations in the Complaint as true, Plaintiffs have not stated a claim for retaliation under Title VI.  Defendants' motions to dismiss any retaliation claim are GRANTED.

### B.    Section 1983 and Section 1981

In Counts II and III of the Complaint, Plaintiffs allege violations of Sections 1983 and 1981 against all Defendants.  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or

13

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1981 states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

### 1.    Defendants State of Michigan and MDOT and Defendants Steucher and Judnic in their official capacities

The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). The Supreme Court has established that Section 1983 was not intended to disregard the well-established immunity of a state from being sued without its consent.  *Id.* at 67. Additionally, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Id.* at 71 (holding that neither a state nor its officials acting in their official capacities are "persons" under § 1983); *see also Abick v. Michigan*, 803 F.2d 874, 876-77 (6th Cir. 1986).[3]

Additionally, the Supreme Court has established that Section 1983 provides an

---

[3] The exception for prospective equitable relief against a government official outlined in *Ex Parte Young*, 209 U.S. 123 (1908) does not apply here because neither Defendant Judnic nor Defendant Steucher remain employed by MDOT or the State of Michigan.

14

exclusive remedy for violations against state actors sued in their official capacity.  "[T]he express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981." *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735 (1989).  Like § 1983, then, § 1981 does not contain a cause of action against states or state actors in their official capacity.  *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008).

Sections 1981 and 1983 do not support claims against a state or state actors in their official capacity.  Plaintiffs' § 1983 and § 1981 claims against Defendants State of Michigan, MDOT, and Defendants Steucher and Judnic in their official capacity are dismissed and Defendants' motions GRANTED.

### 2.    Defendant Judnic Individually

Defendant Judnic argues that Plaintiffs' § 1983 and § 1981 claims against him should be dismissed because many of the allegations are barred by the statute of limitations, Plaintiffs have not alleged that the actions were the result of discriminatory animus, and Plaintiffs fail to identify others who were similarly situated and treated differently.

Defendant Judnic argues that most of Plantiffs' allegations are barred by the statute of limitations.  Both parties agree that the statute of limitations for § 1983 claims in Michigan is three years.  *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005).  Under federal law, the statute begins to run when the plaintiffs knew or should have known of the injury which forms the basis of their claims.  *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001).  This inquiry focuses on when the harm occurred, rather than the plaintiff's

15

knowledge of the underlying facts which gave rise to the harm.  A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.  *Id.*

Plaintiffs argue that the statute of limitations in this case did not start to run until May 2010, when Plaintiffs learned of Defendant Judnic's statement that "no woman should be making that kind of money."  Defendants argue that in 2006, Plantiffs knew its contract was cut and re-bid and that a portion of it was subsequently awarded to a majority firm.  Plaintiffs, however, did not file a complaint with the USDOT until 2010 and did not file a complaint with this Court until November 2011.  Plaintiffs offer no explanation for their delay, except that they did not know of Defendant Judnic's discriminatory statement until 2010.  Plaintiffs did not exercise due diligence in a timely manner and cannot now assert claims for actions that occurred more than three years ago.

Plaintiffs next argue that equitable tolling should apply because Defendant Judnic deliberately misrepresented the truth about his motivations when Plaintiffs asked him why the contract was being cut.  The Sixth Circuit has held, however, that a deception regarding motive supports equitable tolling only where the deception conceals the very fact of discrimination.  *Hill v. United States Dept. of Labor*, 65 F.3d 1331, 1337 (6th Cir. 1995).  Equitable tolling through fraudulent concealment will not be permitted where the plaintiff was aware of all the essential facts constituting discriminatory treatment but lacks direct knowledge or evidence of the defendant's subjective discriminatory motive. *Id.*  The party relying on equitable tolling through fraudulent concealment has the burden of demonstrating its applicability.  *Id.* at 1336.  Equitable tolling is an

16

extraordinary remedy which should be extended only sparingly, and is unavailable unless the plaintiff exercised due diligence in pursuing his claims.  *Drake v. City of Detroit, Michigan*, 266 F. App'x 444, 449 (6th Cir. 2008).

In this case, Plaintiffs knew of the actions that harmed them and they did not file a complaint until November 3, 2011.  Although Plaintiffs did not know about Defendant Judnic's statement, they knew that Defendant MDOT was trying to diversify its contractors, that the 2006 contract originally awarded to Plaintiffs was cut, and that half the original contract was awarded to a majority firm.  Courts have consistently held that lacking knowledge of the discriminatory motive is not enough where Plaintiffs knew all the essential facts constituting discriminatory treatment.  This Court finds that Plaintiffs' allegations against Defendant Judnic before November 3, 2008 are barred by the statute of limitations.

Defendant Judnic argues that the allegations not barred by the statute of limitations are also deficient.  To state a claim under § 1983, a plaintiff must set forth facts that establish the deprivation of a right secured by the Constitution or laws of the United States that was caused by a person acting under the color of state law.  *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011).  Government officials performing discretionary functions have qualified immunity, shielding them from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In determining a qualified immunity claim, the Court must: (1) decide whether the facts alleged in the Complaint make out a violation of a constitutional right and (2) decide whether the right at issue was "clearly established" at the time of the

17

defendant's alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 815-816 (2009).

The Sixth Circuit has held that "damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne*, 655 F.3d at 564.  This means that the Court must analyze separately whether Plaintiffs have stated a plausible constitutional violation by Defendant Judnic without ascribing the acts of the other Defendants to Defendant Judnic.

In the Complaint, however, Plaintiffs allege that in September 2009, Plaintiff BBF lost the bid on a contract because its score sheet indicated that it was "missing key MDOT staff" and when asked, Defendant Judnic refused to meet with Plaintiffs to explain the scoring.  Plaintiffs also assert that Defendant Judnic refused to conduct debriefing meetings with Plaintiffs in person, even though he did them for other consultants.  Plaintiffs further assert that Defendant Judnic engaged in an orchestrated scheme to remove Plaintiff BBF's employee, Love Charles, in order to create a negative impact on Plaintiffs' ability to compete.

The Complaint alleges that Plaintiff Foster is a member of a protected class and that she and her company were treated differently than other similarly situated contractors that were bidding on MDOT contracts, and that Defendant Judnic intentionally discriminated against Plaintiffs because Plaintiff Foster is a woman. Although the statute of limitations applies to this claim as far as Plaintiffs' attempt to collect damages from the 2006 contract, this does not mean that Defendant Judnic's statement that "no woman should be making that kind of money" does not shed light on and further inform the motives he had when treating Plaintiffs differently than other

18

contractors.

This Court finds that the Complaint alleges enough factual bases for Plaintiffs to maintain a § 1983 claim against Defendant Judnic and Defendant Judnic's motion to dismiss the § 1983 claim is DENIED.

42 U.S.C. § 1981 states that all persons shall have the same rights as "enjoyed by white citizens." This does not extend to sex discrimination. *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 179 (1982) (upholding the dismissal of a § 1981 claim because sex discrimination is not cognizable under that section). Because Plaintiffs have not pled any facts to support racial discrimination, Defendant Judnic's motion to dismiss the § 1981 claim is GRANTED.

### C. Michigan Whistleblowers' Protection Act

The Whistleblowers' Protection Act ("WPA") states:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Mich. Comp. L. § 15.362.

### 1. Defendants State of Michigan and MDOT and Defendants Steucher and Judnic in their official capacities

Defendants argue that Plaintiffs' claim under WPA should be dismissed because an action cannot be brought against the state or its agents, pursuant to the Eleventh

19

amendment. As stated above, the Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Additionally, the Supreme Court stated:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Consideration of any state-law-based claims against the state or individuals sued in their official capacity would violate the Eleventh Amendment. *McNeilus Truck & Mfg., Inc. v. Ohio*, 226 F.3d 429, 438 (6th Cir. 2000) (barring a suit against state officials in a federal court for violating state law); *Edwards v. Ky. Revenue Cabinet, Div. of Compliance & Taxpayer Assistance*, 22 F. App'x 392, 393 (6th Cir. 2001) (ruling that neither supplemental jurisdiction nor any other basis for jurisdiction overrides Eleventh Amendment immunity).

Plaintiffs here have attempted to bring a state-law claim against Defendant State of Michigan and MDOT and its officials in violation of the Eleventh Amendment. Defendants State of Michigan and MDOT's motion to dismiss Plaintiffs' WPA claims is GRANTED. Defendants Judnic and Steucher's motion to dismiss, as it pertains to the WPA claim against them in their official capacity, is GRANTED.

### 2.     Defendants Steucher and Judnic in their individual capacities

Defendants Steucher and Judnic argue that Plaintiffs claims under the WPA

20

should be dismissed because Plaintiffs were not employees of the state and, therefore, Plaintiffs do not fall under the statute. The WPA defines an employee as "a person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied. Employee includes a person employed by the state or a political subdivision of the state except state classified civil service." Mich. Comp. L. § 15.361(a). Independent contractors are not considered persons performing services "under a contract of hire." *Chilingirian v. City of Frasier*, 200 Mich. App. 198, 200 (1993). In *Chilingirian*, however, the court determined that an independent contractor could be considered an employee as defined in the WPA under certain circumstances, but that "under the facts of this case, plaintiff was not an employee of the city." *Id.*

In the Complaint, Plaintiffs assert that they are employees within the definition of M.C.L. § 15.361. Alternatively, Plaintiffs argue that even if they are considered to be independent contractors, *Chilingirian* leaves open the possibility that WPA still applies. While Defendants raise a strong argument that the facts in this case do not support a finding that Plaintiffs are or were an employee under the WPA, this argument is premature at the motion to dismiss stage. Plaintiffs need only state a claim upon which relief may be granted, and they have done so here.

Defendants Steucher and Judnic's motions to dismiss Plaintiffs' claims under the WPA, against them individually, are DENIED.

## IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss should be GRANTED in part and DENIED in part.

21

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  February 6, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 6, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager